UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
GOVERNMENT EMPLOYEES INSURANCE CO.,
GEICO INDEMNITY CO., GEICO GENERAL
INSURANCE  COMPANY and GEICO
CASUALTY CO.,

Docket No.:
15-cv-7236 (ERK)(RML)

                              Plaintiffs,

     -against-

BRUCE JACOBSON, D.C., et al.,

                              Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**PLAINTIFFS' MOTION <u>IN LIMINE</u> TO PRECLUDE DEFENDANTS FROM PRESENTING EVIDENCE TO CONTEND THAT DISCLOSURE OF OWNERSHIP WAS MADE TO GEICO INSUREDS AND FOR AN ADVERSE INFERENCE AT TRIAL**

<u>**PRELIMINARY STATEMENT**</u>

Plaintiffs Government Employees Insurance Company, GEICO Indemnity Company, GEICO General Insurance Company, and GEICO Casualty Company (collectively, "Plaintiffs" or "GEICO") respectfully submit this memorandum of law in support of their motion to preclude and for an adverse inference at trial as a result of Defendants BMJ Chiropractic, P.C. ("BMJ"), Jacobson Chiropractic, P.C. ("Jacobson Chiropractic"), Dr. Bruce Jacobson DC, P.C. ("Dr. Bruce"), NJ Neuro & Pain, P.C. ("NJ Neuro"), NJ Pain Treatment, P.C. ("NJ Pain")(collectively, the "PC Defendants"), and Bruce Jacobson, D.C.'s ("Jacobson")( collectively, the "Defendants") failure to produce during discovery a single one of the ownership disclosure forms that the Defendants were required to maintain, pursuant to New York Public Health Law § 238-d and 10 N.Y.C.R.R. § 34-1.5, in connection with their extensive pattern of self-referrals.[1]  Plaintiffs also

---

[1] As discussed below, the Defendants did finally produce, for the first time, at the summary judgment phase, copies of a purported "sampling of sixty-five disclosures of [Jacobson's] ownership interest in other practices signed by [his] patients when they were referred to [his] other

1

respectfully submit that, pursuant to Fed. R. Civ. P. 37(c)(1), the Defendants should be precluded from introducing evidence for the proposition that the Defendants, or anyone associated with the Defendants, ever disclosed Jacobson's ownership interest in any of the PC Defendants to GEICO's insureds.

As further discussed below, GEICO's Complaint alleges that many of the charges submitted by the Defendants to GEICO were unlawful, and ineligible for no-fault insurance reimbursement, because they were the product of unlawful self-referrals amongst Jacobson and the PC Defendants, all of which are solely owned by Jacobson. In particular, under New York's Public Health Law and its implementing regulations, chiropractors -- such as Jacobson -- are prohibited from referring patients to healthcare practices in which they have an ownership or investment interest unless: (i) the ownership or investment interest is disclosed to the patient in writing; and (ii) the disclosure informs the patient of his or her right to utilize a specifically identified alternative health care provider if any such alternative is reasonably available. What is more, the pertinent regulations require chiropractors to maintain documentation of each instance of any such ownership disclosure to their patients. New Jersey imposes similar written disclosure requirements (through what is known as the New Jersey Codey Law), which apply when chiropractors engage in self-referrals to healthcare practices in which they have a "significant beneficial interest". See, e.g., N.J. Stat. Ann. § 45:9-22.5(c)(3). As this Court has already noted, chiropractors who engage in unlawful self-referrals in violation of New York and/or New Jersey

---

practices for treatment". See Docket No. 243, Affidavit of Bruce Jacobson ("Jacobson Aff."). However, of those 65 purported disclosures, only <u>two</u> involved patients identified by GEICO in connection with GEICO's claims in this matter, and nothing was produced in relation to the hundreds of other self-referrals that GEICO specifically identified in its summary judgment motion.

2

law are ineligible to collect no-fault benefits. See Docket Entry No. 246 (Summary Judgment Memorandum and Order), p. 4.

Here, despite multiple requests and Court Orders, the Jacobson Defendants did not produce a single ownership disclosure during discovery, and only produced two purported disclosure forms, for the first time, in opposing GEICO's summary judgment motion.

Accordingly, given the Jacobson Defendants' willful disregard for their discovery obligations, GEICO is entitled (at a minimum) to an adverse inference instruction that – in violation of New York Public Health Law (PHL §238-d and 10 N.Y.C.R.R. § 34-1.5) as well as the Codey Law (N.J. Stat. Ann. § 45:9-22.5) – neither Jacobson nor anyone associated with the PC Defendants disclosed Jacobson's ownership interest in the various PC Defendants to GEICO insureds before causing the insureds to be self-referred between and among the PC Defendants. Furthermore, at this stage in the litigation, any evidence that the Jacobson Defendants may attempt to introduce regarding the disclosure of Jacobson's ownership interest in the various PC Defendants should be excluded as a matter of law.

## STATEMENT OF RELEVANT FACTS

### I. Nature of the Action

Plaintiffs commenced this action on December 18, 2015. See Docket No. 1. Plaintiffs respectfully refer the Court to the Complaint and the Court's Memorandum and Order on Summary Judgment for the full contours of Defendants' fraudulent scheme, as it is impracticable to fully describe every aspect of such a complex fraudulent scheme in a relatively short memorandum of law.

Briefly, however, the Complaint alleges that, beginning in 2012, Jacobson and the PC Defendants masterminded and implemented a complex fraudulent scheme in which they billed GEICO and other automobile insurers millions of dollars for medically unnecessary, illusory, and

otherwise non-reimbursable chiropractic services (the "Fraudulent Services"). See Docket No. 1, passim. The Defendants' fraudulent scheme began in 2012, when Jacobson began to submit a large amount of fraudulent no-fault insurance billing through his unincorporated chiropractic practice under his own, personal tax identification number. See id. at ¶ 98.

Then, in late 2012, Jacobson began to serially incorporate the PC Defendants, a series of chiropractic professional corporations, and to split his billing for the Fraudulent Services across the five PC Defendants and his unincorporated chiropractic practice. See id. at ¶¶ 98-124. This was done in an attempt to "stay under the radar" and, as part and parcel of this scheme, the Defendants then engaged in a pattern of illegal self-referrals designed to: (i) maximize their fraudulent billing opportunities with respect to each patient; and simultaneously (ii) minimize the amount of fraudulent billing submitted through any one of the PC Defendants or Jacobson's unincorporated chiropractic practice with respect to any individual patient. See id. at ¶ 142.

The Defendants' pattern of illegal self-referrals for electrodiagnostic testing typically proceeded as follows: Jacobson caused GEICO-insured patients to be referred from Jacobson Chiropractic or Dr. Bruce (which he owned) to BMJ (which he also owned) for purported electrodiagnostic testing, and neither the Defendants, nor anyone associated with the Defendants, disclosed Jacobson's ownership interest in BMJ to the patients in writing, or advised the patients of their right to use any specifically identified alternative healthcare services provider for the electrodiagnostic testing. See id. at ¶ 143.

Similarly, the Defendants' pattern of illegal self-referrals for chiropractic manipulation under anesthesia ("MUA") typically proceeded as follows: Jacobson caused patients to be referred from Jacobson Chiropractic or Dr. Bruce (which he owned) to NJ Pain or NJ Neuro (which he also owned) for purported MUA consultations and MUA, and neither Jacobson, the PC Defendants,

4

nor anyone associated with Jacobson or the PC defendants disclosed Jacobson's ownership interest in NJ Pain or NJ Neuro to the patients in writing, or advised the patients of their right to use any specifically identified alternative healthcare services provider for the MUA services. See id. at ¶ 144.

II.     **Relevant Law Governing Self-Referrals and the Relevant Procedural History**

Pursuant to New York Public Health Law § 238-d(1), "a practitioner may not make a referral to a health care provider for the furnishing of any health or health related items or services where such practitioner…has…an ownership interest…with such health care provider" "without disclosing to the patient such financial relationships".[2] Pursuant to New York Public Health Law § 238-d(2), "[t]he disclosure shall provide notice of any such financial relationship and shall also inform the patient of his or her right to utilize a specifically identified alternative health care provider if any such alternative is reasonably available. . ." See also, 10 N.Y.C.R.R. § 34-1.5(b). Moreover, "such form shall also be posted prominently in the practitioner's office". Id. The pertinent regulations go on to specify that "[a] practitioner shall maintain documentation of each instance of disclosure to a patient pursuant to this section." See 10 N.Y.C.R.R. § 34-1.5(d). In this context, chiropractors such as Jacobson are required to maintain patient records for six years. See 8 N.Y.C.R.R. § 29.2(a)(3). A similar written disclosure requirement exists under New Jersey's Codey Law. See N.J. Stat. Ann. § 45:9-22.5; see also Allstate Ins. Co. v. Scott Greenberg, D.C., 871 A.2d 171, 179 (N.J. Super. Ct. Law Div. 2004).[3]

---

[2] Pursuant to New York Public Health Law § 238(11), a practitioner includes "a licensed or registered…chiropractor…"

[3] Similarly, pursuant to N.J.S.A. 45:9-22.4, chiropractors are defined as "practitioners." for purpose of the Codey Law limitations/prohibitions.

5

As previously discussed, GEICO commenced this action on December 18, 2015, and alleges fraudulent conduct dating back to 2012. See Docket No. 1, passim. Given the obvious relevance of the Defendants' disclosure, or non-disclosure, of Jacobson's ownership interests in the various professional entities, on April 25, 2016, GEICO demanded the production of all documents reflecting written disclosures provided to GEICO's Insureds. See Declaration of Max Gershenoff ("Gershenoff Decl."), Ex. "1". Then, after the Defendants failed to provide a response to any of GEICO's initial document demands, Plaintiffs were forced to file a motion to compel on August 1, 2016. See Docket No. 79. The Court granted GEICO's motion and ordered, among other things, the Defendants "to provide their full discovery responses" by August 31, 2016. See Aug. 17, 2016 Order. The Defendants then produced written responses to GEICO's initial document demands, which indicated, among other things, that they would produce "[a]ll [ownership disclosures] in [their] possession…except those exempt from disclosure pursuant to doctor-patient and/or attorney-client privilege". See Gershenoff Decl., Ex. "2", at Response No. 58.[4]

However, the Jacobson Defendants failed to produce any of the requested ownership disclosures, or any other documents, in response to GEICO's initial document demands. Accordingly, on October 5, 2016, GEICO filed a second motion to compel production of, among other things, the responsive documents. See Docket No. 83. On October 20, 2016, the Court granted GEICO's second motion to compel and ordered, among other things, the Jacobson Defendants to produce "any and all responsive documents identified…in their previously produced incomplete responses". See October 20, 2016 Order. The Jacobson Defendants eventually

---

[4] While the Defendants' written responses to GEICO's initial document demands are dated July 26, 2016, they were not actually produced until after the Court's Order of August 17, 2016. See Docket Nos. 79-80.

6

produced certain responsive documents to GEICO's initial document demands. However, they failed to produce a single ownership disclosure.

Then, during his May 2017 deposition in this matter, Jacobson, who also testified as the Rule 30(b)(6) witness on behalf of each and every one of the PC Defendants, testified that: (i) the PC Defendants supposedly disclosed his ownership interest, in writing, to any patient that was referred from one of the PC Defendants to another of the PC Defendants; and (ii) Jacobson and the PC Defendants maintained copies of these purported written disclosures. See Gershenoff Decl., Ex. "3", at 295:23-303:11; Gershenoff Decl., Ex. "4", at 54:12-55:24. Accordingly, following the May 2017 deposition, GEICO made another request for all documents reflecting written ownership disclosures provided to GEICO insureds, and the Defendants responded that they would "produce [the requested documents] to the extent any such documents exist within [the Defendants'] possession, custody, or control." See Gershenoff Decl., Ex. "5", at Response No. 4. Nothing was provided, however, and discovery in this action closed per the Court's order in 2020.

Then, on December 7, 2020, in support of Defendants' summary judgment motion and in opposition to Plaintiffs' summary judgment motion, Jacobson submitted an affidavit which included (for the first time) purported ownership disclosure forms supposedly signed by 65 patients. See Jacobson Aff, ¶ 11. However, of those 65 patients, 10 were actually duplicates, leaving only 55 individual patients. Of those 55 individual patients that supposedly signed ownership disclosure forms, only two were from individuals included in the universe of claims at issue in the present lawsuit.[5]

---

[5] The Court itself has acknowledged this as well, stating in its Order on Summary Judgment: "Notwithstanding their failure to produce the ownership disclosure forms during discovery, defendants now attach 65 ownership disclosure forms to their motion briefing. ECF No. 243-34. Only two of the 65 disclosure forms that defendants submit, however, relate to the over 200 patients that GEICO has identified as being the subject of illegal self-referrals. ECF No. 238-34 at

7

**ARGUMENT**

**I.     The Standards on this Motion**

Pursuant to Fed. R. Civ. P. 37(b)(2)(A), "[i]f a party…fails to obey an order to provide or permit discovery… the court where the action is pending may issue further just orders." "The only predicates to the imposition of sanctions under Rule 37(b) are (a) a court order directing compliance with discovery requests, and (b) non-compliance with that order." Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC, 2018 U.S. Dist. LEXIS 168847, at * 18 (S.D.N.Y. Sept. 28, 2018). In addition to Fed. R. Civ. P. 37, courts also have inherent power to impose sanctions for a party's failure to comply with its discovery obligations. See generally City of Almaty v. Ablyazov, 2020 U.S. Dist. LEXIS 89773, at * 29 (S.D.N.Y. May 19, 2020).

In determining whether an adverse inference instruction based on the failure to produce evidence is appropriate, courts in the Second Circuit

> require[] a showing that (1) the party having control over the evidence had an obligation to timely produce it; (2) that the party that failed to timely produce the evidence had "a culpable state of mind"; and (3) that the missing evidence is relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support the claim or defense.

Kortright Capital Partners LP v. Investcorp Inv. Advisers Ltd, 330 F.R.D. 134, 137 (S.D.N.Y. 2019). Regarding a party's "culpable state of mind", courts in the Second Circuit have found that a finding of ordinary negligence may give rise to an adverse inference instruction. See generally id. at 137-138.

Moreover, pursuant to Fed. R. Civ. P. 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was

---

7; *compare* ECF Nos. 233-3 at 383-97, 613-14 *with* ECF No. 243-34. The other 63 forms relate to patients who have nothing to do with this litigation".

8

substantially justified or is harmless." "The Federal Rules of Civil Procedure require that a party disclose documents that may be used to support its claims or defenses… Pursuant to Rule 26(e), a party is obligated to timely supplement or correct its initial Rule 26 disclosures, and its responses to interrogatories and document demands". Heredia v. Americare, Inc., 2020 U.S. Dist. LEXIS 122880, at * 13 (S.D.N.Y. July 13, 2020).

II.  **An Adverse Inference that the Defendants Failed to Disclose Jacobson's Ownership Interest in the PC Defendants is Warranted**

    a.  **The Defendants had an Obligation to Produce the Ownership Disclosure Forms**

First, the Defendants clearly had an obligation to produce the ownership disclosure forms. As previously discussed, GEICO demanded the production of the ownership disclosure forms during the early stages of this litigation, the Defendants said they had the disclosure forms and would produce the disclosure forms, and -- when they did not produce the disclosure forms -- the Court ordered the Defendants to produce them. See Gershenoff Decl., at Ex. "1", at Request No. 58; Gershenoff Decl., at Ex. "2", at Response No. 58; Docket No. 83; Oct. 20, 2016 Order; Gershenoff Decl., Ex. "3", at 295:23-303:11; Gershenoff Decl., Ex. "4", at 54:12-55:24; Gershenoff Decl., Ex. "5", at Response No. 4. However, despite GEICO's multiple requests and a Court Order, the Defendants failed to produce a single ownership disclosure form during discovery in this litigation.

Moreover, as a matter of law, the Defendants were required to "maintain documentation of each instance of disclosure to a patient", and this obligation encompassed the time period covered by GEICO's Complaint, which was filed in 2015 and alleges fraudulent conduct dating back to 2012  See 10 N.Y.C.R.R. § 34-1.5(d); 8 N.Y.C.R.R. § 29.2(a)(3); see also Universal Acupuncture Pain Servs., P.C. v. State Farm Mut. Auto. Ins. Co., 2002 U.S. Dist. LEXIS 19555, at * 8-13 (S.D.N.Y. Oct. 10, 2002) (commenting on probability of adverse inference where defendants failed

9

to file tax returns and finding fact that "[t]here is no question that [defendants] are required to file tax returns" would weigh in favor of drawing adverse inference).

### b. The Defendants Acted with a Culpable State of Mind

Second, the Defendants acted with a culpable state of mind. Not a single ownership disclosure form was produced during discovery in this litigation, despite: (i) GEICO's multiple document requests for the ownership disclosure forms; (ii) the Defendants' multiple responses that they would produce the ownership disclosure forms; (iii) the Court's October 20, 2016 Order directing the Defendants to produce "any and all responsive documents identified" in their responses to GEICO's initial document demands; (iv) Jacobson's testimony, under oath, that the ownership disclosure forms existed and were in the Defendants' possession, custody, and/or control; and (v) 10 N.Y.C.R.R. § 34-1.5(d)'s requirement that the Defendants maintain documentation of each ownership disclosure they made to GEICO's insureds.[6]

At a minimum, the above-referenced conduct is indicative of the negligence required to draw an adverse inference. See Infomir LLC, 2018 U.S. Dist. LEXIS 168847, at * 36 ("[defendant] has produced no documents, indicating willful noncompliance [with discovery order]"). However,

---

[6] In keeping with the fact that the Defendants acted with a culpable state of mind, the Defendants repeatedly have engaged in bad-faith discovery conduct during this action. Strictly by way of example, the Defendants forced GEICO to move to compel them to respond to GEICO's discovery requests, a motion that the Court granted (see Docket No. 79 and August 17, 2016 Order); and then failed to comply with the Court's order granting GEICO's motion to compel, thereby forcing GEICO to make another motion to compel, which the Court once again granted, this time with an order directing the Defendants to show cause as to "why the court should not grant plaintiffs' request for costs for their apparent willful failure to comply with the court's Order … ." See Docket No. 83, and October 20, 2016 Order. Moreover, in regard to a drawn-out dispute about the Defendants' tax returns, the Court itself has noted in this case, "At bottom, plaintiffs' complaint is that defendants have litigated in bad faith, forcing plaintiffs and the court to 'spend months-- including numerous motions, conferences and hearings--trying to compel the defendants to produce tax returns that the defendants knew did not, in fact, exist.' Plaintiffs' position is not without merit." See July 17, 2019 Order (emphasis added).

Plaintiffs respectfully submit that the Defendants' culpable conduct actually goes beyond mere negligence. As the record in this action makes clear, the Defendants disregarded repeated Court orders to produce disclosure forms that they <u>swore</u> were in their possession, custody, and control, and then -- at the summary judgment stage -- tried to muddy the waters by producing an assortment of inapposite disclosure forms with no actual connection to this action. Against this backdrop, it is clear that the Defendants acted with a culpable state of mind.

    **c.    The Ownership Disclosure Forms are Highly Relevant to GEICO's Claim that Many of the Charges Submitted to GEICO Through the PC Defendants were Fraudulent and Unlawful Because They were the Product of Illegal Self-Referrals Amongst the Jacobson Defendants**

Third, the ownership disclosure forms that have not been produced are critical to GEICO's claim that many of the no-fault charges submitted through the PC Defendants to GEICO were unlawful and ineligible for no-fault insurance reimbursement because the Defendants engaged in unlawful self-referrals. The Defendants' failure to produce the ownership disclosure forms has resulted in severe prejudice to GEICO, as GEICO had no way of obtaining the ownership disclosure forms from any other source in this litigation. In fact, whether or not the ownership disclosure forms even exist is at the heart of GEICO's claim regarding the illegal self-referrals. This, coupled with the fact that the Jacobson Defendants were required – by law – to maintain copies of the disclosures, demonstrates why the ownership disclosures are relevant to GEICO's claims.

Accordingly, Plaintiffs respectfully submit that an adverse inference is clearly warranted to the effect that neither the Defendants, nor anyone associated with the Defendants, disclosed Jacobson's ownership interest in the PC Defendants.

### III. An Order Precluding the Defendants from Introducing Evidence that the Defendants, or Anyone Associated with the Defendants, Disclosed Jacobson's Ownership Interest in the PC Defendants is Also Warranted

If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), and – as in the present case – the violation was not substantially justified or harmless, then courts looks to the factors enumerated in Patterson v. Balsamicao, 440 F.3d 104, 117 (2d Cir. 2006) to determine whether preclusion is appropriate. See Fed. R. Civ. P. 37(c)(1); Lujan v. Cabana Mgmt., 284 F.R.D. 50, 71 (E.D.N.Y. 2012). The Patterson factors include: (i) the party's explanation for the failure to comply with the discovery rules; (ii) the importance of the precluded evidence; (iii) the prejudice suffered by the opposing party as a result of having to prepare to address the new evidence; and (iv) the possibility of a continuance. See id. at 68.

As previously discussed, the Defendants failed to produce a single ownership disclosure form during discovery in this litigation, despite protracted litigation aimed at obtaining those very disclosures from the Defendants. Here, the failure to disclose the ownership disclosure forms was not harmless, as the ownership disclosure forms go to the heart of Plaintiffs' self-referral claims under both New York and New Jersey law. See Lujan, 284 F.R.D. at 68 ("[a]n omission or delay in disclosure is harmless where there is an absence of prejudice to the offended party").

In addition, Plaintiffs respectfully submit that the Patterson factors weigh in favor of exclusion, as (i) the Defendants are not able to offer an adequate explanation for their failure to produce the ownership disclosure forms, and instead tried -- unsuccessfully -- to muddy the waters by producing dozens of disclosure forms with no actual connection to GEICO's claims this action; (ii) the prejudice to Plaintiffs would be severe as the ownership disclosures go to the heart of GEICO's claims regarding unlawful self-referrals, and discovery in this action has been closed for a long time; and (iii) a continuance would require reopening discovery long after it has closed, on the eve of summary judgment motions, and would serve no apparent purpose considering that the

12

Defendants have had ample opportunity to produce the disclosures, but evidently are unable or unwilling to do so.

Accordingly, given the Defendants' disregard for their discovery obligations, they should be precluded from introducing evidence that they, or anyone associated with them, disclosed Jacobson's ownership interests in the PC Defendants to any of GEICO's insureds in connection with the performance of the services. See Heredia., 2020 U.S. Dist. LEXIS, at * 13-19 (excluding documents not produced during discovery, in part, because allowing late disclosure would require "Defendants' having to revise and file a renewed motion for summary judgment"); Lujan, 284 F.R.D. 50, 68 (E.D.N.Y. 2012) (excluding evidence not produced during discovery).

## CONCLUSION

For the reasons set forth herein, the Court should: (i) draw an adverse inference against the Defendants to the effect that neither the Defendants nor anyone associated with the Defendants disclosed Jacobson's ownership interest in the PC Defendants to GEICO's insureds before causing the insureds to be self-referred between and among the PC Defendants; and (ii) preclude the Defendants from introducing at trial evidence that the Defendants, or anyone associated with the Defendants, disclosed Jacobson's ownership interest in the PC Defendants to GEICO's insureds, together with such other and further relief as to the Court may seem just and proper.

Dated: August 9, 2021
      Uniondale, New York

                              RIVKIN RADLER LLP

                              By:   */s/ Max Gershenoff*
                                  Max Gershenoff, Esq.
                                  Steven Henesy, Esq.
                                  Sean Gorton, Esq.
926 RXR Plaza
Uniondale, New York 11556
(516) 357-3000

*Counsel for Plaintiffs Government Employees Insurance Company, GEICO Indemnity Company, GEICO General Insurance Company and GEICO Casualty Company*

5389169.v4